IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


P1 GROUP, INC., a Kansas
Corporation,

            Plaintiff,

    vs.                      **Case No. 12-2412-RDR**

TEPA EC, LLC and
TRAVELERS CASUALTY AND
SURETY COMPANY OF
AMERICA,

            Defendants.
_____

**<u>MEMORANDUM AND ORDER</u>**

      The complaint in this case alleges that plaintiff P1 Group, Inc. performed work pursuant to a subcontract with defendant TEPA for a construction project for the United States at Ft. Riley, Kansas.  Defendant TEPA, as principal, and defendant Travelers, as surety, are alleged to have provided a payment bond for the project as required by the Miller Act, 40 U.S.C. § 3131(b)(2). The complaint asserts that P1 Group provided work, materials, and services in the sum of $1,473,541.00, but has been paid only 1,233,972.00, leaving a balance of $239,569.00 due and owing.  P1 Group alleges breach of contract against TEPA and a violation of the Miller Act against TEPA and Travelers.

      This case is before the court upon the motion of defendants TEPA and Travelers to compel arbitration and stay the complaint.

It is agreed that the subcontract contains an arbitration provision which states in part:

> Arbitration:   In the event SUBCONTRACTOR and CONTRACTOR fail to resolve any disputes that may arise out of, relate, in any way, to this Agreement, or breach thereof, whether in contract, tort or statutory, SUBCONTRACTOR agrees that the matter in question shall be decided by arbitration.   SUBCONTRACTOR hereby waives any rights that SUBCONTRACTOR may have to file a lien against the Project. SUBCONTRACTOR agrees that arbitration is the first and primary remedy for resolution of all disputes and that the right to pursue litigation is hereby waived.   All decisions and awards rendered by the arbitrator shall be final, and judgment may be entered upon the award in accordance with applicable law in any court having jurisdiction thereof.
>
> > 1) If at any time controversy shall arise between the CONTRACTOR and the SUBCONTRACTOR with respect to any matter or item involved in the subcontract, and which the parties hereto do not promptly adjust and determine, or to which the OWNER of their authorized representative cannot decide to the satisfaction of both parties hereto, then the written orders of the CONTRACTOR shall be followed and upon completion of the work and before final payment is made, said controversy shall be decided in the sole discretion of CONTRACTOR either by arbitration or by a lawsuit filed in El Paso County District Court, Colorado. . . .
> >
> > 3) If a dispute resolved by arbitration or lawsuit results in a decision in favor of CONTRACTOR, SUBCONTRACTOR shall pay all of CONTRACTOR'S attorneys' fees and costs, whether incurred prior to or subsequent to the filing of the Demand for Arbitration or lawsuit.
> >
> > 4) Any arbitration shall be conducted through the Judicial Arbiter Group (JAG), or if JAG

is no longer in existence, the arbitration
will be conducted by an impartial arbitrator
selected by CONTRACTOR.  Exclusive venue for
any arbitration or litigation proceeding
shall, in the sole discretion of the
CONTRACTOR, be in Colorado Springs, Colorado,
or in the location of the Project.

5) This subcontract, although drawn by the
CONTRACTOR, shall, in the event of any
dispute over its meaning or application, be
interpreted fairly and reasonabl[y] and
neither more strongly for nor against either
party.

It is also undisputed that defendant TEPA has demanded
arbitration which plaintiff has refused.

TEPA and Travelers argue that the court should compel
arbitration and stay further proceedings upon the complaint under
9 U.S.C. §§ 2 and 4 which provide that arbitration clauses in
contracts are valid and enforceable "save upon such grounds as
exist at law or in equity for the revocation of any contract" and
that the court may compel arbitration under a valid agreement to
arbitrate.  P1 Group opposes the motion to compel arbitration on
the grounds that there is no valid and enforceable agreement to
arbitrate between P1 Group and Travelers or between P1 Group and
TEPA.

It is agreed that there is no arbitration agreement between
P1 Group and Travelers, but defendants argue that this case
should be stayed as to any claims between those parties while
arbitration proceeds between P1 Group and TEPA.  This was the

3

approach followed by Judge Crow of this District in <u>U.S. ex. rel.</u>
<u>Humbarger v. Law Company, Inc.</u>, 2002 WL 436772 (D.Kan.
2/20/2002). If there is an enforceable arbitration agreement
between P1 Group and TEPA, the court believes the same procedure
should be applied here.

So, the main question which remains is whether the
arbitration clause in the subcontract should be enforced. The
parties agree that the subcontract should be construed in
accordance with Colorado law as dictated in the subcontract.

P1Group contends that this court should find there is no
agreement to arbitrate between P1 Group and TEPA based on the
reasoning in three cases. One of those cases is <u>Gourley v.</u>
<u>Yellow Transportation, LLC</u>, 178 F.Supp.2d 1196 (D.Colo. 2001).
In <u>Gourley</u>, the court held that an arbitration provision
contained in an employee handbook was not enforceable because the
employee handbook repeatedly stated that it was not a contract
and was not binding upon the employer vis-à-vis an employee.
Therefore, the court denied a motion to stay a wrongful discharge
claim and compel arbitration. Plaintiff also cites <u>Dumais v.</u>
<u>American Golf Corp.</u>, 299 F.3d 1216, 1219 (10th Cir. 2002). In
<u>Dumais</u>, the court held that an arbitration provision in an
employment handbook could not be enforced because it allowed the
employer free rein to unilaterally modify the terms of the

4

agreement at any time.  Finally, plaintiff relies upon <u>Grosvenor</u> <u>v. Qwest Corp.</u>, 854 F.Supp.2d 1021 (D.Colo. 2012).  In <u>Grosvenor</u>, the court held that the arbitration provisions in an internet subscriber agreement were illusory and not enforceable because the provider reserved the right to modify any of the agreement's provisions, including the arbitration sections, at its sole discretion.  <u>Id</u>. at 1034.

The arbitration agreement between P1 Group and TEPA may be distinguished from the arbitration provisions in the cases cited by P1Group because the agreement is part of a real contract, not a handbook which purports not to be a contract, and the provisions do not permit one party to make changes unilaterally. Although P1 Group asserts that the arbitration provisions are one-sided in favor of TEPA, nothing is cited to support a claim that the arbitration provisions are invalid, illusory or unenforceable, or that P1 Group did not agree to them.  To the extent that P1 Group may be asserting that the arbitration provisions are unconscionable, the court does not agree.  Under Colorado law, to show the contract defense of unconscionability, a party must demonstrate some evidence of overreaching resulting from an inequality of bargaining power or an absence of meaningful choice (procedural unconscionability), together with contract terms which are unreasonably favorable to the party with

the advantageous bargaining position (substantive unconscion-
ability).  Vernon v. Qwest Communications International, Inc.,
2012 WL 768125 *19 (D.Colo. 3/8/2012) (quoting Davis v. M.L.G.
Corp., 712 P.2d 985, 991 (Colo. 1986)).  P1 Group has failed to
advance a persuasive showing as to either procedural or
substantive unconscionability in this matter.

     In sum, TEPA and Travelers have provided undisputed evidence
of an arbitration agreement.  P1 Group has not provided evidence
or stated a claim to suggest that the arbitration agreement is
unenforceable.  Consistent with the Vernon case, the court shall
grant the motion to compel arbitration, and consistent with the
Humbarger decision, the court shall stay further proceedings as
to the claims in the complaint pending arbitration.

     TEPA and Travelers have asked that the court award them
their attorneys' fees associated with litigating the motion to
compel.  They note that prior to filing the motion to compel,
counsel for TEPA asked counsel for P1 Group to consent to
arbitration and to a stay of the complaint and shared the
Humbarger decision with counsel for P1 Group.

     TEPA and Travelers contend that an award of attorneys' fees
is justified on the basis of the contractual provision which
permits TEPA as the "CONTRACTOR" to recover fees and costs if it
prevails in a dispute resolved in favor of TEPA as a result of

arbitration or a lawsuit.  TEPA and Travelers also argue for a fee award on the grounds that P1 Group has not presented a good faith argument in opposition to the motion to compel arbitration and for stay of proceedings upon the complaint.

As of this time, the court will not award fees pursuant to the contract because there are other issues in dispute between the parties which have not been resolved by arbitration or lawsuit.  It should be more efficient to decide all the attorneys' fees issues at one time.  The question may be revisited upon a later motion.

The court may impose an award of attorneys' fees as a sanction when a party "shows bad faith by delaying or disrupting the litigation" and to make "the prevailing party whole for expenses caused by his opponent's obstinacy." Hutton v. Finney, 437 U.S. 678, 689 n.14 (1978).  The Tenth Circuit "sets a high bar for bad faith awards." Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co., 470 F.3d 947, 954 (10th Cir. 2006). The Tenth Circuit has "repeatedly recognized that the [bad faith] exception is a narrow one and may be resorted to only in exceptional cases." FDIC v. Schuchmann, 319 F.3d 1247, 1250 (10th Cir. 2003).  The Tenth Circuit insists "'that a trial judge make a finding of bad intent or improper motive.'" Mountain West Mines, 470 F.3d at 954 (quoting Sterling Energy, Ltd. v. Friendly

7

Nat'l Bank, 744 F.2d 1433, 1437 (10th Cir. 1984)).  Bad faith may be found "only when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." Sterling Energy, 744 F.2d at 1435 (interior quotation omitted).  In some cases, a claim may be so frivolous as to reflect bad faith.  "Such a finding is particularly appropriate when [a party] has alleged a claim that is patently frivolous and that, like fraud, is also opprobrious by nature and designed to cause embarrassment and humiliation." Sterling Energy, 744 F.2d at 1437.  But, "bad faith requires more than a mere showing of a weak or legally inadequate case, and the exception is not invoked by findings of negligence, frivolity, or improvidence." Autorama Corp. v. Stewart, 802 F.2d 1284, 1288 (10th Cir. 1986).

The court is not satisfied that the stringent requirements for an award of fees under the bad faith rule have been satisfied in this instance.  Therefore, the court shall not award fees on that basis.

In conclusion, the court shall grant the motion to compel arbitration and stay the complaint, but deny without prejudice the request for attorneys' fees on the basis of the subcontract between P1 Group and TEPA.  Fees will not be awarded on the grounds of bad faith.

**IT IS SO ORDERED.**

Dated this 3rd day of October, 2012 at Topeka, Kansas.

                    s/Richard D. Rogers
                    United States District Judge